on behalf of First American Bank. Okay. Fifteen minutes per side, save some time for rebuttal. And if we unduly harass you with questions, we might be a little lenient on time, although I don't think we will. All right. Thank you. Thank you. May it please the court, counsel. Scott Schmuckler on behalf of National Union. Gary Allman and Donald Down embezzled money from American Airlines by inducing it to issue checks to two fictitious vendors. Mr. Schmuckler, I don't mean to stop you so quickly, but we know the facts of the case. I want to assure you of that. And can I first ask you about whether you really mean to argue that our determination of the admission of the testimony is a de novo standard of review, or whether that's an abuse of discretion that you're arguing undercuts the determination of the admission of the testimony. The decision on directed verdict is certainly de novo, and the decision to exclude expert testimony is an abuse of discretion. All right. That wasn't the position you took in your brief, however. I apologize for that, Your Honor. That was not our intent, at least. From our perspective, we brought this action for failure to exercise ordinary care in opening an account. That claim was supported at trial by really two main prongs, testimony of the bank itself and testimony of an expert witness. The testimony of the bank or the testimony of the expert, whether it's one or the other, was sufficient to create a triable question under this Court's precedent. And the Court's decision to grant a directed verdict solely because it excluded the testimony of Mr. Potter, in our minds, in and of itself was a legal error that mandates reversal. So your position is, first of all, it was error not to allow Mr. Potter to give his opinions, and secondly, even if that was not an error, that there was sufficient other evidence to be able to go to the jury on the issue of the liability of the bank. Correct, Your Honor. Our position is really founded on a line of precedent that this Court has in the Los Amigos supermarket versus mercantile bank case, which says that even in a professional liability context where expert testimony is required, that expert testimony can be provided by the defendant itself. So in this case, when we called Sarah Savinelli to testify, and she testified to what reasonable banking practices was and what the bank's practices was, if a jury could find a violation of those practices alone, you didn't have to go any further into expert testimony in order to satisfy the standard of care. Several times you characterized her, Ms. Savinelli's testimony, and taking out the aspect of that's what we do to somehow establish that this is what their policy should be, and that this is something that is, as it were, the standard of care. And so the question is, does the bank, as an admission that they're required to do that, which isn't what she said. She does on page 109. We did quote certain aspects of her testimony, but on page 109 of the record, Ms. Savinelli was specifically asked about what reasonable banking practices was. And if Your Honor wants, I can give you the quote from the testimony. Well, I was talking about your repeated citation of the following. One of the things the bank does when it opens accounts is to make sure that the person sitting in front of them was who they said they are, correct? Answer, that's what we try to do, yes. And so it isn't that that's what their policy is to do, but that's what they try to do. Now, you argue it as if that's an admission that it is something that they feel that they are required to do. Excuse me. That was the follow-up question to the question that's on record page 1109, where I asked her, would you agree with me that reasonable banking practices require a policy of identifying the person opening an account? Yes. And then she was specifically asked, in this instance, who's the account holder? She identifies Addison Business Supplies and AMD Supplies as the account holder. That is the person sitting in front of them. And it's the equivalent of Bill Gates walking in and saying, I'd like to open an account on behalf of Microsoft. The person opening the account, their customer in that instance is Microsoft. It's not exactly the same, because it's a sole proprietorship under these circumstances. And that's really, you know, whether you attach personal or anything to your interpretation of what it is, this is the difficulty I'm having. A, they establish that the person was who he said he was. B, they got an address from him, a real address, as well as a post office address. Are you contending that they were, in addition, required to do a site visit of his business or to see the catalog of what items they offered for sale or to place an order to see if the order was honored and it actually got something from this business? If it's a state-of-the-art business, for example, or something that hasn't yet gone forward, the fact that he has it out of his home, what are you really saying that the bank had to do? You keep calling this a fictitious entity. But if you create the entity before you open for business, aren't you in exactly the same situation? How could this have affected anything? Well, it could have affected things in many ways. You don't, you can't speculate as to what Mr. Dow might or might not have done. He shows up at the bank. He testifies this himself with nothing to demonstrate that the entities existed. And the question of, the question the bank, the bank has testified there is a direct correlation to how the account is opened and what checks can go into that account. And that's consistent with the law, which says you can't take a business check and put it in a personal account. This court's addressed that. Courts around the country have addressed that. But that presumes that this is a personal account. True, but in order to make the success of the fraud hinged on the opening of the account. There's no question, the bank testifies at trial and they've never fought this claim. I think the success of the fraud hinged on the fact that United Airlines issued a number of checks over a period of several years in the amount of $1 million, which they never looked at to see whether this was a real vendor or not. Well, Your Honor, that's not in the record. And I will say to you, we would contest that characterization of, it's American, but American's procedures. But to the point you're making, which is really a causation point, the code adopts a very broad standard of causation. It's not approximate causation. It's not direct causation. It's contributed. And if you look at the comments and you look at White and Summers, kind of the recognized treatise in the code, you're talking about an extraordinarily broad standard of causation. All I have to do is prove that there are any link in the chain of events leading to the loss to get to a jury. And while Your Honor and I can argue the facts, isn't that a question of fact for the jury? But let's get back to the question of what are you saying that a bank has a responsibility to do when someone comes in and opens a DBA account, an account where he's a sole proprietor, and he supplies his identification and he gives an address. What additional steps is the bank required to do, in your view, to satisfy their obligation? What was Powers going to say? Obtain an assumed name certificate. In Illinois. No, they never got an assumed name certificate for either. They got an application for one, but never got the certificate. So in Illinois, it's very easy to verify whether or not a DBA exists. This is not, you know, you have to order something, you've got to call them, you've got to go to their house, you've got to knock on the door. I mean, we would point to various inconsistencies in what they were given, to how his story that day did not jive with the documents they sat in front of them. But putting aside all those inconsistencies, in Illinois at least, in Cook County, in the collar counties, this is not a complicated process. This is actually an extraordinarily easy process. And when you're talking about letting somebody into the banking system, letting them in, this is not that much of a burden. To ask somebody to come in and give you one sheet of paper per entity is no burden whatsoever. And that's really what Mr. Potter, 20 years of banking experience serving on national committees, comparing policies across the nation, in our mind were qualified. Now, the reason he was excluded is whether or not he could offer an opinion to how a specific bank of a specific size does business, that's not in the code. The code doesn't require banks of comparable size. That's not a litmus test. You would argue that would go to wait and not try. Absolutely. And that's what this court held in the Coots case when it addressed whether a testifying expert who had business in Chicago could opine about how somebody might do it in Crestwood. The circuit court directed verdict, excluded testimony, saying somebody in Chicago can't talk about Crestwood because it's the big city versus a small town. And this court said, no, that goes to wait, not admissibility. So while ultimately you can argue the facts, and I think the bank has done that in their brief, but ultimately you can argue the facts, at the end of the day, Savinelli's testimony combined with what Potter could say and is qualified to say certainly raises a triable question of fact. For the jury to resolve, if the jury wants to give more weight to one expert than the other, that's the jury's decision. But to reach a directed verdict where all inferences have to be drawn in our favor, all facts have to be assumed as true, in our minds is reversible error under either a de novo standard or an abusive discretion standard. I'm going to ask you about the California case, Espresso Roma, and then there was a case that followed up on that, and you addressed this in your reply brief, but is the L&B real estate versus Wells Fargo, is that still good law? Well, interestingly, if you look it up on Lexis, you do get the red symbol, but nowhere in there, if you look at all the citations underneath there, has it ever been reversed. It's my understanding in talking to Lexis that the reason the red flag comes up is because it is an unpublished case and there are certain ways of treating unpublished cases within the context of California pellet practice. Because what you say about Espresso Roma, it rings true to me that that's something that you can consider sized, but it's not necessarily dispositive. And certainly if you apply the Illinois law on the interpretation of a statute, Illinois Supreme Court is clear, you interpret the statute as it's consequence case, does it ever say it has to be a bank of comparable size? It says in the same geographic region. And so when a witness comes in and he says, I know about banking practice 20 years worth and I've compared it across the nation, including the Harris Bank, quite frankly, the quintessential Midwestern Chicago bank, that's enough to get you to the jury. Until Montreal took it over. Until Montreal took it over. But in 1994, Harris Bank, quintessential Chicago regional bank. You had a part in your brief where you were talking about the failure to allow the use of an offer of proof and you claimed that that was reversible error in and of itself. And you cited a case, is that a position you're in? Well, I don't think, I certainly did not use the word offer of proof. In our minds, the reversible error was not in allowing us to either conclude the testimony of Mr. Pottery, quite frankly, to conclude our case in chief. But you cited a case for that proposition that really on its facts was completely different and hugely distinguishable on that. You cited a case that talks about the judge not hearing the basis, it was a post-conviction, not hearing the facts that that judge would have had to consider to form the discretion. In fact, the court said that the court was denying itself the data which it required to form the discretion. That's clearly not the case here because the trial judge's ruling on the admissibility would not have been changed one iota by allowing the opinion to come in. The issue was a foundational issue, which the judge heard everything that you cared to present on the basis of the fact that the judge was denying itself the discretion to make the decision. On the issue of foundation. I'm not sure I agree with you there. I mean, I think the analogy we're trying to draw, and admittedly, it's not, I will agree, it is not directly on all fours, if you will. But the analogy we're drawing here is that Mr. Potter was excluded and a verdict was directed prior to the end of the case in chief and prior to the end of his testimony. And the question is, have you asked all of your questions? Are you done questioning this witness? For the court in the middle of the examination to end the case and exclude a witness, in our minds, is the equivalent, and here's why. There's no harm. There's no prejudice in allowing the testimony to come in, allowing this gentleman to offer his opinions, for us to lay in our minds what the testimony should be. She can reach the very same conclusion ten minutes later, I will concede. But in our minds, the standard should be, or is, depending on your perspective, I guess, should be or is that at least on a directed verdict, you're entitled to put in your case in chief so that this court has the benefit of all of the testimony. Is the logical extension of what you're saying, if you have a witness who's an expert witness, that you're proffering that would give two, three, four days of testimony? If you believe that a proper foundation hasn't been laid for the opinion to be received, and we're not dealing with the propriety of that decision at this point, but that the attorneys offering this witness have to be permitted to spend those two or three or four days to allow all the opinions to come in that the judge says it hasn't had a foundation laid for? Because that's basically what you're arguing here. Isn't that, though, the nature of any offer of proof is that you're going to be allowed to put in the testimony that would come in, regardless of the length of time, and there's no Illinois case ever saying if the offer of proof takes a day, you get it. If it takes two days, you don't get it. And so it seems to me that if you're going to direct a verdict, and the standard on review will be whether or not the court has made the proper decision in directing a verdict, then it seems to me that you have to let in the testimony to get the case finished. And here the court felt that, A, it was keeping out on foundation grounds the opinion of the expert, and, B, that without the expert, that the case could not be proved. Now, I recognize that you take exception with the second point, and I may agree with you. But if you were to presume that that was the correct basis from the judge's point of view, that there was no foundation, I don't think there's any requirement that the judge allows this testimony to go. Offers of proof can be presented in a variety of ways, including with a summary of what the opinions would have been. And maybe that would have run into the problems that counsel talks about in her brief, about whether these were disclosed opinions or not. But, you know, that's a different issue. But, Your Honor, we tried to do that very same thing in an alternative way, asking the court for an opportunity to present this in writing, and were denied that. I don't think the court wanted to hear much about your case. No, I think we were done. I mean, it was clear at the time, and I understand the efficiency of the court and not wasting the court's time, it was clear at the time that the court had decided that, absent an expert, we couldn't proceed, and that Mr. Potter could not testify. Our position is that in order to avoid some of the many arguments that the bank has now made in terms of offer of proof and lack of foundation, that we should have been provided that opportunity. That said, I think the record standing alone with what Mr. Potter said and what Ms. Savinelli said, the inferences to be drawn in our favor, facts to be assumed as true, there's a triable question of fact. Thank you, Your Honor. And I do give you credit for calling Mr. Potter in a banking case, given its wonderful life and its effect on American culture. You can't resist it. I'm sure George Bailey would have testified on the other side of the case against him. Thank you, Your Honor. Good morning. Good morning. If it pleases the Court, Ellen Chappell on behalf of First American Bank. The question that was posed here, what does the bank have a responsibility to do, is exactly on point.  It's the observance of reasonable commercial standards prevailing in the area in which the person is located with respect to the business in which the person is engaged. Small banks may be engaged in different business than large banks. Banks that are a neighborhood bank may be engaged in a different business than banks that have a large commercial base. The UCC recognizes this, codified it as part of the standard, and that's what Espresso Roma was addressing. Even that L&B real estate case afterwards said size is certainly relevant. Well, it's relevant, but the Court here gave it dispositive effect. I mean, the Court says, well, you know, accepting your argument at trial that because he's from chemical, he can't talk about this little bank. He's not familiar. Actually, you have to look at the record as a whole here and what the judge was looking at and what he came in and testified to. He did not have any background in account opening procedures. She said he was not qualified to opine about First American Bank's account opening. Isn't that weight? I mean, you have a witness here who has plenty of experience. Now, maybe it's not the kind of experience that you think the jury ought to hear, but he's got plenty of experience, and he testifies that he knows what's going on in the Midwest. Now, maybe you want to poke holes in him in cross-examination. Maybe you would have won the case on cross-examination, but it seems like there was enough of a foundation laid that he ought to have been heard. Well, let's talk about his experience, because they took a long time to talk about what he actually did for Chemical Bank in New York. You know, he started out in computers. He advanced to the mergers and acquisitions team because they had to integrate the new banks that they were acquiring into their system. He never opened an account. He never testified that he supervised any opening account. He never testified that he implemented any account opening procedures. He never testified that any of his experience at those big banks in New York had anything at all to do with account opening. It would have been a great cross-examination, I'm sure. And I'm serious when I say that. Isn't that the difference between admissibility and weight? No, it actually isn't. He has to have some basis upon which to opine about what are the proper standards in this context. If we had called a teller who had worked in a bank for 30 years, would that teller have been qualified? You know, did the teller have open accounts? Did the teller have any? I'm sorry. Well, just in his testimony, he did say that in 1994 he included Terrace Bank in Chicago as part of his committee work and that that work included due diligence and opening an account. He said that he worked for the American Bank Association at seminars through the 80s. He said that in 1994 he began to share information among banks. He said that in 1994 he was the chief of staff for the head of check operations at Chemical Bank and the chair of the check fraud committee. Wouldn't all of that give him some experience about opening accounts? Actually, the check processing is a totally separate thing than opening accounts. Opening accounts is very different. He said he worked on the check float time. That's like saying a surgeon can't testify about how you get blood. Or how you send something to the lab. Well, no, not exactly. Not exactly, because he testified that he, when asked how did you get knowledge about account opening, specifically, how did you get knowledge about account opening, he said we get knowledge about account opening, I got it from taking part in this committee that formed after these accounts were opened, after the accounts were opened. Actually, his testimony included the time before 1994. It included time through the 80s and specifically in 1994. Actually, not for the committee he was talking about, this Orlando 13, where he says he gained the knowledge about account opening. Page 180, in 1994 included Harris Bank and Chicago as part of committee work, which included due diligence and opening accounts. Now, when he testified initially, he said that this committee formed in 1995. The second account was opened in January of 1995. I don't think I've ever heard a better cross-examination. I'm serious. That was not allowed to occur. And I don't know why. I can't for the life of me look at this record and understand why the court didn't allow you to just tear into this guy. Because he actually had no basis. He says his only basis for knowing what account opening procedures even were came from participation in this committee. And he said this committee was formed for the purpose of trying to find ways to combat fraud. And he said the first thing that they did forming this in this time period, which if you read it carefully, it slides a little bit, but he was saying it was formed after these accounts were opened. First thing they did was try and come up with some common nomenclature for fraud so they could gather statistics and then figure out how to deal with fraud. This one would fit within that, wouldn't it? These two swindlers coming in, opening up accounts for business that don't exist, cashing the checks, taking the money, spending the money, going to the racetrack. Absolutely. That sounds like fraud to me. If they ever got it. And there was one Chicago area bank involved in this committee. He might have gotten some second-hand knowledge about what practices were at that one Chicago bank. But you're not seriously defending that the way they allowed this to be opened was compliant with ordinary care, are you? Yes. Really? Yes. I want to hear that. How is that ordinary care? You mean opening our account opening procedures? Yeah. Yeah. Because, first of all, they've already, I'm sorry, I didn't mean to interrupt, but there is testimony that they can't find their procedures from 1994. Is that still a correct statement? That's correct. That's correct. I mean, and we had a witness who was employed by the bank for many, many, many, many years, including that time period. Sarah. Sarah Savinelli. And she said, when an individual walks into the bank and opens an account, what we did at that time is to identify that individual, make sure that that person was who they said they were. Now, when an individual walks in. And the person who came in, he said he was the guy who had these two companies. Right. So they tried. They didn't do it because they couldn't. No, that's. Because he was a phony. No, what their policy was, when a sole proprietorship walked in, is they identified the individual opening the account. Because the sole proprietorship is the alter ego. So he treated it like a personal account. They used the same procedures. They used the social security number. The same procedures applied for personal and for these accounts. Okay. So they didn't ask for an employee identification number. They got a social security number for this person. They got a social security. They got his address. And there was no testimony. They got his phone number. That's correct. So they treated it like a personal account. They treated the same procedures for personal accounts applied for sole proprietorship. So then how did they allow corporate checks to go into a personal account? This was not a personal account. Oh, wait. You want to eat your cake and have it too. No, no, no, no, no, no. The same procedures applied. Because, look, what do they have to go on? When a person comes in and they are opening a sole proprietorship. These are exactly the points that Justice Epstein pointed out. So they are an individual. They're declaring, I'm going into business. Now, Section 3404 says the risk of loss here really goes to American Airlines because American Airlines was in the position to prevent this fraud. The narrow exception that could apply to American Airlines. And you folks weren't? No. I mean, it seems like you have, what you got in this case was an opportunity by the judge to, you know, you get the case thrown out, even though the evidence is that your practice is sort of winking that at it. It's like fraud enabling. No, no, no, no, no, no. These procedures were, the procedures that were in place at the time, were to identify the individual that walks into the account. Now, if it had been a corporate account, you would have had an entirely different procedure. That probably would have come into evidence. And corporate checks can go into corporate accounts. That's correct. And corporate checks can go into other business accounts, partnerships, things like that. Okay. But corporate checks can't go into personal accounts. That is correct. Corporate checks, and these accounts were opened up in the name of A&E Supplies and Addison Business Supplies. Now, the one thing that their expert might have testified to, had this testimony been allowed in, is that First American Bank should have asked Donald Down for an assumed name certificate. Now, the assumed name, there was an assumed name certificate. He testified that First American Bank actually did ask him for an assumed name certificate on the second account. And he testified that he went to the county clerk's office. He got an assumed name certificate. He doesn't remember whether he gave it to First American Bank or not. It wasn't in the file. Who knows if he gave it to him and didn't make it into the file. On the second account. On the second account. But not the first one. Now, UCC 3404 says a depository bank can be liable if its failure to exercise ordinary care, and assuming that was a failure to exercise ordinary care, substantially contributes to the loss. There was nothing about this assumed name certificate that led to this loss. Well, that's a question of fact. That's causation. That's a question of fact for the jury. You know what? I think you were deprived of an opportunity to win this case at trial. Seriously. Well, you know what? It's actually not a question of fact. It sounds like you would have been up to the task. Your theory is that since he testified that he obtained one, if he had given it to the bank, that would have satisfied that requirement that Potter would have testified was imposed and that it wouldn't in any way have affected the fraud because they're not going to go further and inspect the viability of this business, nor are they required to. Isn't that your argument? That is correct. And when you say it's an issue of causation, there's a reason that substantially contributing appears in that statute. And we quoted White and Summers explaining that that's a hurdle. That's a big hurdle to get over to get to that question of fact that goes to the jury. And actually White and Summers said judges who would have awarded summary judgment in a contributory negligence regime to a bank that was only slightly negligent must now feel compelled to give those cases to the jury under a comparative negligence scheme. Those judges would be wrong. Now, as under the old law, the bank's negligence becomes relevant only if it substantially contributes to the loss. If it did not substantially contribute to the loss, the case shouldn't go to the jury. It sounds like it did. Can I ask you about a rather troubling aspect of your brief to me? Okay. It starts on page 12 where you say under ordinary standard of care of the UCC, you use the sentence, this definition imposes a professional negligence standard. And you go across the United States to the California appellate court to cite Espresso Roma Corporation versus Bank of America, by showing your diligence in research on this issue. I have a problem with the failure to discuss several Illinois cases that are arguably as relevant as that. For example, Advancula versus United Blood Services, which is where our Supreme Court listed, for example, a number of professions for which expert testimony is required to establish the standard of care, listing attorneys, physicians, podiac practitioners, dentists, accountants, and social workers, and leaving out banks. But more directly than that, an opinion authored by Justice Puchinsky, Tucker versus Soy Capital Bank and Trust from 2012, which says, and I quote, a bank is not a professional and thus there is no professional relationship, end quote. And the argument that even in a context where there is a professional standard, there are also circumstances in which there, and this really wasn't argued I think by the appellants either, but I wanted to see what your answer to this is. Even in contexts where there is a professional standard, it's not the exclusive standard. In the Stute case, which is cited in the briefs, the Supreme Court basically distinguished between professional negligence and institutional negligence in the medical context. And they found that the standard of care of an institutional negligence case may be proved, quote, may be proved by a number of evidentiary sources, including but not limited to hospital bylaws, statutes, accreditation standards, custom and community practice, but that expert testimony is not always required, end quote. So we really have a much different view in total in Illinois than is suggested by your sentence and your sole citation of the California case. We have it, don't we, that A, could in the case of an institution be proved by other sources and that banks have been expressly found in the Tucker case to have not been subject to that standard. First of all, there is not a lot of UCC law in Illinois. There isn't a lot of UCC law anywhere. Well, and there isn't a lot of UCC law under 404. The case I think that you refer to was not a 3404, and I don't think it was a UCC case in this sense. It was related to a, if I recall correctly, it was related to the general allegation of negligence outside the context of the code. As a distinction, but is it a difference? Well, if you look at the definition of ordinary care under the UCC, it requires that degree of specialized knowledge that's attendant to a professional negligence standard. So, you know, I could go on and on about that distinction, but when it comes right down to it, they didn't have anybody to testify as to what was the standard of ordinary care here. And the fact of the matter is that even if Mr. Potter had testified, he could not overcome that substantially contributing harm. But, you know, I'm still troubled by the premise, which you thought important enough to include, that this should be, it can only be proved by an expert witness, and that in the case of an institution, the negligence of which you were asserting, that there is no other way to prove it, which is really the second point that Mr. Smukler was making on the issue of the rendition of the directed verdict, which is even without Potter, they should have been able to go to the jury. I'll tell you, when I read the Espresso Roma case, that convinced me. I thought they handled it very well and really did reach the right conclusion that that is a professional negligence standard. And so you either didn't find or decided not to cite the Illinois cases that followed? I thought that that was pretty dispositive because it was the UCC standard. And it is very difficult to find UCC cases. That aside, we did spend a significant amount of time talking about the evidence that National Union was going to present on whether or not there was any negligence and whether there was a breach of the standard of ordinary care. What was that standard of ordinary care? There was never going to be any testimony that they had to go out, that First American Bank had to go out and investigate this entity. And they used terms like verify the existence and legitimacy, and that comes down to the assumed name certificate. Again, I hate to repeat myself, but I like your defense. I just wish you were able to present it to a jury. I really think you should have been. I think the plaintiff should have put his case on, and I think you would have done a spectacular job of defending it, but I think the jury should have heard it. It just seems amazing to me that on the basis of the foundation that was presented, that that expert wasn't allowed to testify, number one. And number two, there was enough evidence of just ordinary negligence, confusing practices with personal accounts and corporate accounts, that it ought to have gone to the jury, not that it was the most persuasive case in the world. Well, the confusion was really created by the use of the terminology. What First American Bank said very consistently was, our procedure was always identify the individual who opened the accounts. They did the same thing with corporate accounts, by the way. They did it with sole proprietorship accounts. They did it with individual accounts. They may have asked for more things with respect to corporate accounts. At that time, their procedure was not to ask for an assumed name certificate with respect to sole proprietorship accounts, but the assumed name certificate didn't. The point of the statute is, if the bank could have detected that fraud through the exercise of ordinary care, and could have prevented the loss, then the bank may potentially be liable. There is nothing that the bank could have done with this assumed name certificate. There's nothing that it would reveal. Wait, wait, wait. W-E-I-G-H-T. It all goes to wait, and it just wasn't allowed to be considered by a fact finder. I agree with you that that's the argument that makes a lot of sense. But what evidence was there of the standards? What evidence was there that there were other banks in this area that were requiring the assumed name certificate? There really wasn't. Did Mr. Potter have a foundation to say that there were other banks in this area who were comparable to First American Bank who were requiring assumed name certificates at that time? No. He was involved in an industry committee, and he may have learned secondhand about some bank that was never demonstrated to be comparable in any respect to First American Bank. There's a basic level of foundation that has to be established before the expert gets to the jury. That testimony has an indicia of reliability to the jury. And the judge needs to be a gatekeeper. It's just not nearly as skinny as you protest that it is. I just don't think it's as skinny as you think it is, with all due respect. Well, you know, it would be encouraging to know that somebody is going to look at what this expert's base of knowledge is and determine whether he has any basis to say, boy, that bank did it wrong. I tried cases for 27 years with experts all the time. A lot skinnier than this. I understand. I understand. All right. Well, I think that I do not have anything further. Thank you. I only have two points I'd like to make in rebuttal. I mean, I think the first point the Court has pointed out, there is enough evidence here that it's treated like a personal account, but it's opened in the name of the business. You can't take a business check and put it into a personal account. Mr. Potter did have experience working on committees at banks that he worked at where he learned the policies and procedures. He compared it. Certainly, based on everything that was presented, and more importantly could have been presented that day, it should have gone to the jury just to weigh the evidence and render a verdict. Regardless of how the Court may feel about the strength of the case, that's ultimately for the jury to decide. Thank you. Thank you both. Thank you for a very interesting appeal, and we will take it under consideration and get back to you directly. We are adjourned.